Civil Action No. 19-CV-4237-LDH-SIL

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

PABLO MENEZES CRUVINEL,

                              Petitioner,

-against-

LEILA COELHO SOARES CRUVINEL,

                              Respondent.

-------------------------------------------------------------------X

## PETITIONER'S RESPONSIVE PRE-TRIAL BRIEF

                              Yours, etc.

                              Harris Law Firm, P.C.
                              Sondra I. Harris, Esq.
                              30 Hempstead Avenue, Suite 151
                              Rockville Centre, New York 11570

SERVED 09-09-2020 by ECF BOUNCE
Andrew D. Huynh
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ………………………………………………….. ii

POINT I
THE DOCUMENTS AND THE ACTIONS OF PETITIONER
PROVE HE NEVER CONSENTED TO REMOVAL OF CHILD ……………. 1

POINT II
RETURNING THE CHILD TO BRAZIL DOES NOT
VIOLATE HER HUMAN RIGHTS …………………………………………... 3

POINT III
THERE IS NO GRAVE HARM TO THE CHILD IN
RETURNING HER TO HER FATHER …………………………………….. 5

# TABLE OF AUTHORITIES

Cases:                                                          Page(s)

Baxter v. Baxter
    423 F3d 363 Ct. of Appeals, 3d Cir. 2005 ……………………….   2

In Re ALC
    16 F3d, 1075, CD Cal, 2014 ………………………………………..   2

## **POINT I**

### **The Documents and the Actions of Petitioner Prove He Never Consented to Removal of Child**

Respondent alleges that petitioner agreed to allow the child to stay in America if she was happy. However, all of the admissible and probative documentary evidence proves such is not the case, and petitioner specifically did not give any such consent.

Indeed, if respondent's bizarre allegation was true, she would not have agreed to petitioner, **in writing**, requiring the child to return to Brazil within three months, or agree to the condition that the authorization was conditioned on the child **not** permanently residing in the United States, a condition respondent fails to even mention in her memorandum. The only explanation is that she, from the time before she left Brazil, misrepresented her intentions and misled petitioner, and intended, at all times, to move permanently to New York.

Respondent's cavalier, unsubstantiated testimony of petitioner's alleged statements is not evidence, especially when all of the documentary evidence in this case contradicts her. Thus, they should be ignored.

In contradiction to respondent's allegation that Mr. Cruvinel had the subjective intent to give consent, the testimony as well as the documentary evidence will show exactly the opposite is true. Moreover, respondent's actions in attempting to obtain sole custody, once she began to reside in America (even before her new child was born) shows that, in New York, as well as in Brazil, she was manipulating the Court system and was forum shopping to find a court which would change custody. These are not the actions of a person who believed petitioner had given his consent to AC staying in America. Indeed, she never requested petitioner to agree to change the visitation or custody provisions of the divorce decree before she went to the Nassau County

1

Family Court because respondent knew petitioner would never agree. Instead of going back to the Brazilian Court that four months before had granted joint custody to the parties, she went forum shopping to the New York courts, hoping petitioner would not appear, and she would prevail by default.

Parenthetically, respondent disingenuously argues that, while Mr. Cruvinel shows receipts for payments, he does not show corresponding wire transfers, or withdrawals. Since respondent fails to show any documentary evidence at all to show that Mr. Cruvinel consented to child A's removal, such argument must fail.

In the case of In Re ALC, 16 Fed. Supp.3d 1075, CD Cal, 2014, the Court stated, "while consent does not have to be expressed with the same degree of formality that is required for subsequent acquiescence, a court should focus on what the petitioner actually contemplated and agreed to in allowing the child to travel outside [his or her] home country." (Baxter v. Baxter, 423 F3d 363, 371, 3d Cir., 2005.) In the matter sub judice, as in Baxter, 423 F2d at 371, the father did not consent to the child remaining in New York. Rather, he consented to respondent to travel to New York, temporarily, for music lessons. He only intended and consented, **in writing**, to the trip lasting up to three months. Thus, respondent has no proof of petitioner's consent to AC's removal, and petitioner's actions prove he never gave consent.

2

## **POINT II**

### **Returning the Child to Brazil Does Not Violate Her Human Rights**

The World Health Organization, in a paper entitled "Understanding and Addressing Violence Against Women," stated that the data on the nature and prevalence of femicide are increasing worldwide. The article points out that Mexico and Guatamala in particular haved high rates of femicide. It also states, in the United States, two mass school shootings in 2006 were characterized by the shooters as singling out girls and female teachers. England, India and Italy also have high rates of violence against women. Respondent's experts say nothing of the worldwide trends of femicide, but focuses on Brazil, making it appear this is a unique problem. The evidence will show that this is not true, but is a worldwide problem, and many countries, including the United States, have issues in this regard.

Indeed, worldwide, there is a culture of violence against women. However, the courts have repeatedly stated that exceptions to the Hague Treaty are to be narrowly construed. For a human rights violation to be considered, the court must find that to return the child would place her in an intolerable situation. If the court were to accept the fact that violence against women is a human rights violation, almost no child could be returned to their home country. Furthermore, there is not a single iota of proof that the rate of femicide affects AC specifically, in any way. Indeed, respondent claims she left Brazil because of petitioner's conduct, not because of some generic threat of violence to AC. Thus, respondent clearly did not fear for her child.

This defense, while clever, must fail. There is no proof of any real threat to AC if she returns to Brazil that would be any greater than such threat would be in other countries. The United States State Department has never stated that femicide is a reason not to travel to Brazil.

3

To permit such a defense would be to set an unworkable precedent. A large proportion of countries, which executed the Hague Treaty, would be banned from availing themselves of the remedies contained therein. Such a result would destroy the purpose of the treaty. Thus, the defense regarding femicide and violation of human rights should be dismissed.

## POINT III

## There is No Grave Harm to the Child in Returning Her to Her Father

Respondent claims AC would suffer grave harm if returned to Brazil because of the alleged emotional abuse by petitioner against respondent.

However, all of the alleged abuse took place while the parties were married and living together. Indeed, petitioner has also alleged abuse by respondent toward him, including but not limited to, having hot coffee thrown at him.[1] However, all of this alleged abuse is irrelevant because, if the child is returned to Brazil, the parties will **not** live together, especially since respondent has remarried. Respondent has admitted petitioner has never physically abused AC, and the only emotional abuse was her observing alleged arguments between the parties. She does not state petitioner was ever convicted in any abuse allegations.

Further, respondent's own expert witness' psychological report contradicts the allegation of grave harm. The expert described AC as being happy and well-adjusted, and a child who loves both of her parents. She does well in school and has friends both in Brazil and America. This description contradicts the dire warning of the effects the alleged abuse might have on the child that respondent alleges. In fact, AC appears to be a normal child, unaffected by the acrimony between her parents.

Finally, respondent consented to joint custody with petitioner in her divorce settlement. She even agreed to liberal visitation and agreed to continue to live where she was living to expedite such visitation. Unless respondent is admitting to misleading the court and Mr. Cruvinel, she had no fears of grave harm to her child at the time of the divorce. Only after she

---

[1] This incident, as well as several others, which petitioner will testify to, were never related to Dr. Favaro. Thus, it is unclear if he knew all the relevant facts, whether his findings would be the same.

5

moved to America, and her Nassau County Family Court petition was dismissed, did she begin to allege a grave risk of harm to AC from her father if she was returned to Brazil. Such behavior shows that her allegations are false, and she is alleging such defense solely to attempt to defeat petitioner's Hague claim. Such behavior should not be permitted, and the child should be returned to Brazil.

            Respectfully submitted,

            _____
            Harris Law Firm, P.C.
            By: Sondra I. Harris, Esq.
            30 Hempstead Avenue, Suite 151
            Rockville Centre, New York 11570
            (516) 569-2600